# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7792 | **DATE** | 11/21/2002 |
| **CASE TITLE** | | Eduard Caro vs. Anthony J. Principi | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Caro's Motion for Summary Judgment as to Counts II and V is DENIED and the Secretary's Motion for Summary Judgment is GRANTED. The case is DISMISSED in its entirety pursuant to Federal Rule of Civil Procedure 56.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | NOV 2 2 2002 | | |
| | Notified counsel by telephone. | | date docketed | 27 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 NOV 21 PM 5: 17 FILED 10 | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT **F I L E D**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**NOV 2 1 2002**

Judge Harry D. Leinenweber
U. S. District Court

EDUARD CARO,

          Plaintiff,

        v.

ANTHONY J. PRINCIPI,
Secretary, Department of
Veterans Affairs,

          Defendant.

Case No. 00 C 7792

Hon. Harry D. Leinenweber

**DOCKETED**

**NOV 2 2 2002**

## MEMORANDUM OPINION AND ORDER

Eduard Caro ("Caro") has sued his employer, Anthony J. Principi, Secretary of the Department of Veterans Affairs ("the Secretary"), alleging discrimination based on gender (Count I), national origin and race (Count II), and retaliation (Count V) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and age discrimination (Count IV) in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"). Before the Court are Caro's Motion for Summary Judgment on Counts II and V of the First Amended Complaint and the Secretary's Cross-Motion for Summary Judgment on all claims.

## BACKGROUND

Over the course of some ten years of employment, Caro, by his estimation, applied for roughly forty different positions within the Department of Veterans Affairs (the "VA"). As Caro sees it, he

was the most qualified applicant for every one of those positions. Caro Dep. at 85-86. As evidenced by the current suit, numerous deciding officials within the VA have, over the years, taken a different view of Caro's unsuccessful attempts at career advancement. The following summary of the facts of this case is culled from the uncontested facts as documented in the parties' Local Rule 56.1 submissions.

Eduard Caro was born in Puerto Rico on May 7, 1956. In 1983, Caro received a medical degree from Universidad CETEC in the Dominican Republic. Although he has a medical degree, Caro never passed the board exams required as a precondition for entering a residency program in the United States. As a result, Caro's quest to become licensed to practice medicine effectively ground to a halt, and Caro was forced to explore alternative careers. Since 1989, Caro has worked at the Veterans Administration Medical Center at Hines, Illinois (the "Hines VAMC"). While employed at Hines VAMC, Caro has been an active member of the Hispanic Affairs Committee, a group designed to assist Hispanic employees in their pursuit of hiring and promotional opportunities at Hines VAMC.

In 1989, the VA developed a training program designed to improve career opportunities in the field of Medical Administration for eight individuals selected for the program from "underrepresented groups" (referred to as the Medical Administration Officer Pilot Training Program or "MAO program"). Prior to launching the program, the VA distributed an announcement

package containing various documents describing the MAO program. The proposal for the MAO program, which was included in the announcement package, stated that "[u]pon successful completion of the training program, the trainees *will compete* throughout the VA system for assistant chief or equivalent positions(GS-9/11)" (emphasis added). A Promotion Announcement, which was also included in the announcement package, stated that "[p]romotion up to the target grade of GS-12 *may be made without further competition* provided [the] candidate has demonstrated [an] ability to perform the graded assignments satisfactorily and meets regulatory requirements" (emphasis added). William Soltys, the Chief of Medical Administrative Services at Hines VAMC ("Soltys"), understood this provision to mean that a successful trainee in the MAO program *could* be promoted as high as a GS-12 position without being required to compete for the position, but that the VA was not *required* to promote the trainees without competition; not an unreasonable interpretation of the MAO program's mandate given the discretionary language used in the announcement materials. Conversely, Caro interpreted this same language to mean that successful completion of the MAO program obligated the VA to promote candidates to target grade managerial positions without competition. Caro offers no support, other than his own subjective understanding, for this interpretation of the MAO program's mandate.

Caro was selected to participate in the MAO program and was assigned to complete his training at Hines VAMC along with two other trainees - Minnie Gandy (Black/female) and Fernando Rivera (Hispanic/Puerto Rican/male). Neither Gandy nor Rivera believed that they were entitled to promotions without competition upon successful completion of the MAO program. Shortly after Caro started his second year in the program, Soltys told Caro that he would not promote him into a supervisory position within the Medical Administrative Services (the "MAS") at Hines VAMC. According to Soltys, he followed this policy because he did not want to place the former trainee in a position where he would immediately supervise employees who may have assisted in providing his training. Soltys claims to have followed this policy with all his trainees since 1974 and Caro offers no evidence to the contrary. Soltys certified that Caro satisfactorily completed the training program in September 1992.

After completing the MAO program, Caro applied for various MAS supervisory positions both at Hines VAMC and other facilities, but did not receive any of those positions. Unable to find a supervisory position, Caro accepted placement without competition as a Medical Administrative Assistant (GS-9), a non-supervisory position in the MAS at Hines VAMC. During the following years, Caro continued to make unsuccessful bids for promotions to a wide variety of positions within Hines VAMC. The following provides a brief summary of those positions, the VA's decisions regarding

those positions and Caro's actions following those employment decisions. The details of the decision-making process for each position will be discussed in further detail in the analysis of Caro's Title VII and ADEA claims.

On February 16, 1994, the VA issued a Promotion Announcement for the position of Supervisory Prosthetic Representative (GS-11/12). Caro and three other applicants applied for the position. To be considered for the position, an applicant was required to have at least one year of specialized work experience relating to the duties of the position or, in the alternative, at least three years of progressively higher graduate education or a Ph.D. or equivalent degree. Caro was initially rated as qualified, but was subsequently rated as unqualified when it was learned that Caro's foreign medical education could not substitute for specialized experience unless it had been specially certified as equivalent to medical education in the U.S. Caro was unable to obtain such certification until long after the Supervisory Prosthetics Representative position was filled. Caro contacted an EEO counselor and complained about his non-selection on April 1, 1994. At that time, Caro tried to raise additional allegations going back to 1991, but was informed that they were time-barred.

On September 21, 1998, the VA issued a Promotion Announcement for the position of Program Analyst. Caro applied for the job and was rated as qualified, but was notified in December 1998 that he did not receive the position. Caro did not pursue EEO counseling

regarding this position until May 1999 and was informed at that time that the claim was time-barred.

On March 29, 1999, the VA announced four openings for the position of Program Specialist. The Promotion Announcement indicated that the job required both clinical work experience and specialized knowledge regarding computer programing. Caro applied for the position and was rated as qualified. Caro was not selected for the position and received formal notice to this effect on May 17, 1999. Apparently unable to wait for the formal notice, Caro contacted an EEO counselor on May 14, 1999 regarding his non-selection for this position. Caro alleged that he was the victim of retaliation for his prior EEO complaint and his involvement with the Hispanic Affairs Committee, and that he was discriminated against based on his race, sex and age.

On November 4, 1999, the VA announced an opening for an Administrative Officer position in the Chief Information Officer's Field Office (the "CIOFO"). Caro applied for the position and was rated as qualified. The selecting official, David Skinner ("Skinner"), reviewed the approximately twenty-five applications and selected for interviews only those candidates possessing what Skinner believed to be the most relevant skills and experiences. Caro was not among the candidates selected for an interview and did not receive the position. Caro subsequently contacted an EEO counselor to complain that he did not get the Administrative Officer position because he had been retaliated against for prior

EEO activity and discriminated against on the basis of race, national origin, sex, and age.

Sometime in early 2000, the VA issued a Promotion Announcement for Administrative Assistant to the Director of the Emergency Room. Caro applied for this position, but the position was eliminated before any selection was made due to budget constraints. During that same period, presumably due to the aforementioned budget constraints, the Emergency Room was restructured in such a way that several Emergency Room clerks now came under Caro's supervision, in addition to the personnel he already supervised. Caro believed that his new duties warranted an upgrade in his position and salary. Soltys looked into this possibility on Caro's behalf and was informed by personnel officials that Caro's position would not be upgraded.

The year had still more disappointment in store for Caro. On May 8, 2000, the VA issued a Promotion Announcement for the position of Administration Specialist. Caro applied for the position and was rated qualified. Soltys, the decision-maker for this position, did not select Caro for the job. On May 11, 2000, an opening was announced for the position of Medical Records Administrator. Caro applied for the position, but was rated not-qualified because he did not meet the time-in-grade requirements for the position. Caro also applied for the position of Administrative Officer in the VISN Imaging Line, was rated qualified, and interviewed for the position sometime in April or

May 2000. Caro was not selected for the position. Sometime in the autumn of 2000, Caro was also passed over for the position of MAS Education Coordinator. This position was not advertised and was filled without competition. On July 3, 2000, Caro filed an administrative complaint consolidating his claims of discrimination relating to the recent slew of promotion denials. Caro's fortunes finally changed in late 2000 when he was in fact selected for the open position of Financial Analyst, a GS-9 position with a career target grade of GS-11.

Caro initiated the current action on December 13, 2000, challenging nearly every adverse employment decision made by his supervisors at Hines VAMC over the preceding ten years. Caro asserts that these decisions were all the result of retaliation and discrimination based on age, race, national origin, and gender in violation of Title VII and the ADEA.

Now before the Court are the Secretary's Motion for Summary Judgment on all claims and Caro's Motion for Summary Judgment on his claims of race/national origin discrimination and retaliation.

### MOTION FOR SUMMARY JUDGMENT

#### Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A court must

"review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis University*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001). A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In the employment discrimination context, "[when] the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment." *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002).

## DISCUSSION

### Relevance of Pre-1994 Employment Actions

Federal employees may not assert Title VII claims in federal court when they failed to first timely exhaust the administrative remedies available to them. 42 U.S.C. § 2000e-16(c); *Rennie v. Garrett*, 896 F.2d 1057, 1059 (7th Cir. 1990). This rule applies equally to federal employees pursuing claims of age discrimination under the ADEA. *McGinty v. United States Dept. of the Army*, 900 F.2d 1114, 1116-17 (7th Cir. 1990). Prior to October 1992, a federal employee was required to seek EEO counseling within 30 days

of any alleged discriminatory action. 29 C.F.R. § 213.214(a).

Since October 1992, federal employees have been obligated to seek
EEO counseling within 45 days of alleged discriminatory conduct.
29 C.F.R. § 1614.105(a)(1).

In this action, Caro seeks to base his ADEA and Title VII
claims on adverse employment actions dating back to 1992. Caro
alleges, *inter alia*, that Soltys failed to consider Caro for seven
different promotions between 1992 and 1993. According to Caro, he
had an absolute entitlement to these positions due to his
participation in the MAS training program. However, Caro's first
contact with an EEO counselor did not come until April of 1994 -
far more than 45 days after the last of these alleged
discriminatory acts. When Caro did finally contact an EEO
counselor, it was to complain of the fact that he had not been
selected for promotion to the position of Supervisory Prosthetics
Representative, and it was on the basis of this allegation alone
that Caro's administrative complaint was accepted for
investigation. Caro could avoid the effect of his failure to
pursue available administrative remedies for his 1992-1993
grievances by showing that: (1) the claims are like or reasonably
related to the EEO charge actually filed, and (2) the claims in the
complaint reasonably could develop from the EEO investigation into
the original charges. *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th
Cir. 1995). If Caro is to get the benefit of this narrow
exception, "the EEOC charge and the complaint must . . . describe

the *same conduct* and implicate the *same individuals*." *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis in original). Caro alleges that Soltys was the decision-maker for all the pre-1994 promotion decisions. However, Soltys played no part in the decision not to promote Caro to the position of Supervisory Prosthetics Representative, the subject of Caro's first EEO complaint. The earlier claims clearly do not implicate the same conduct and individuals as the timely-filed EEO complaint, and Caro is therefore barred from pursuing Title VII and ADEA claims premised on any of the alleged pre-April 1994 discriminatory non-promotions.

Hoping to avoid this result, Caro invokes the "continuing violation" doctrine. Application of that doctrine is not appropriate in this instance. "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Dasgupta v. Univ. of Wisc. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997). The clearest examples of a continuing violation involve hostile work environment sexual harassment, where duration is often necessary to convert merely offensive behavior into materially adverse conduct actionable under Title VII. *Id.* A failure to promote is not of this character; the discriminatory promotion decision is a discrete act of discrimination, and each discriminatory failure to promote

constitutes a separate actionable "unlawful employment practice." *Nat'l. R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2073 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 2072. Here, Caro was aware, contemporaneously with the VA's decisions to deny him promotions in 1992 and 1993, of all the facts that he now alleges as the basis for his Title VII and ADEA claims. The Court finds no reason to allow Caro to use the continuing violation doctrine to reach back and challenge now decisions that he could have objected to long ago. The Court will therefore begin its analysis of Caro's claims with the VA's decision to deny Caro the promotion to Supervisory Prosthetics Representative in March 1994. This opinion will discuss Caro's Title VII and ADEA claims together, as they derive from the same set of facts and the controlling legal standards are the same. *See Cecilio v. Allstate Ins. Co.*, 908 F.Supp. 519, 528 n.7 (N.D. Ill. 1995).

### Discriminatory Failure to Promote

Caro presents no direct evidence of discrimination. To defeat a motion for summary judgment, a plaintiff who cannot provide direct evidence of discrimination may use the burden shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* analysis is also applied to ADEA claims. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S.

133, 142 (2000) (assuming, without deciding, that the *McDonnell Douglas* framework is fully applicable in the ADEA context). Under this method of proof, the plaintiff raises an inference of discrimination by offering evidence sufficient to establish a *prima facie* case. *McDonnell Douglas Corp.*, 411 U.S. at 802-05. To establish a *prima facie* case of discriminatory failure to promote, Caro must show: (1) he is a member of a protected group; (2) he was qualified for the position he sought; (3) he was rejected for the position; and (4) the employee promoted to the position was not a member of the protected group and was not better qualified for the position. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). If Caro can establish the elements of a *prima facie* case, the burden shifts to the Secretary to articulate a legitimate, nondiscriminatory reason for the decision. *Id.* To demonstrate that the articulated reason for the failure to promote is a pretext, Caro must show that the Secretary's decision was more than merely incorrect; Caro must eliminate the articulated reasons for the employment action as possible reasons by showing that the proffered explanation is a lie, a fraud on the court. *Reeves*, 530 U.S. at 147-48; *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir. 2001). Caro can meet this burden with "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the [decision] in question, or were insufficient to motivate the [adverse employment action]." *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d

- 13 -

389, 395 (7th Cir. 1998). Finally, because rigid adherence to the *McDonnell Douglas* burden shifting framework was never intended, the Court will avoid unnecessary and repetitive analysis by focusing its analysis in most instances solely on the issue of whether Caro can demonstrate pretext. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)(stating that "[t]he *prima facie* case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic"); *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant"); *cf. Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 521 (7th Cir. 1994)(noting that "too rigid adherence to the formulaic prescriptions of the appellate courts . . . [sometimes] blocks proper analysis of what should be uncomplicated issues of discrimination").

### *Relevance of Statistical Evidence*

In his reply brief, Caro makes much of the fact that the VA's internal studies have shown a "manifest imbalance" and "conspicuous absence" of Hispanic males in certain professional and supervisory positions at Hines VAMC. From Caro's perspective, the logical inference to be made from these findings is that, as a Hispanic male, he was obviously discriminated against in his efforts to be promoted at VA. The Court cannot follow Caro in taking the leap

from raw statistical data indicating under-representation to the existence of "obvious" discrimination.

First, both as pleaded and argued, Caro's is not a "pattern and practice" disparate treatment claim - the arena in which such statistical evidence is generally employed. *Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 553 (7th Cir. 2000). Statistical evidence may sometimes be relevant to an individual's disparate treatment claim. *See Kidd v. Ill. State Police*, 167 F.3d 1084, 1101 n.16 (7th Cir. 1999) (holding that "[i]n conjunction with other evidence of disparate treatment . . . statistics can be probative of discrimination"); *Bell*, 232 F.3d at 553 (stating that statistical evidence of disparate treatment can be "relevant to and probative of the issue of pretext even when it is insufficient to support a pattern and practice disparate treatment case"); *cf. Kada v. MCI Systemhouse Corp.*, 255 F.3d 359, 363 (7th Cir. 2001)(Posner, J.) (examining, without deciding, whether statistical evidence alone can ever be sufficient to establish a case of disparate treatment discrimination). However, statistics such as those offered by Caro, indicating nothing more than an under-representation of Hispanic males in the at-issue jobs, have no probative value in a disparate treatment discrimination claim. Statistical evidence could be relevant to the case at bar if it demonstrated a racial disparity between the pool of *qualified applicants* as compared to the at-issue jobs. *See Employment Opportunity Comm'n v. Chicago Miniature Lamp Works*, 947 F.2d 292, 302 (7th Cir. 1991). For

example, Caro's evidence might be relevant if it addressed the number of Hispanic males who had applied for and been subsequently denied promotions as compared to other groups. *Cf. Bell*, 232 F.3d at 552-54 (holding statistical evidence analyzing promotion decisions within a federal agency for the positions at issue to be relevant to the issue of pretext in a Title VII failure to promote action). Caro's statistical evidence is not of this kind. Instead, Caro simply postulates that the statistical disparity in the number of Hispanic males in supervisory positions is the direct consequence of the VA's indifference to the discriminatory promotion practices of its supervisors. But, as the Seventh Circuit noted in a similar context, "[t]his kind of vague, speculative evidence by an employee with his own axe to grind has too little probative value to make out a prima facie case of discrimination and we must see whether there is anything else." *Kada*, 255 F.3d at 361 (citations omitted). Let's see if Mr. Caro has anything else.

### Supervisory Prosthetic Representative

The Promotion Announcement for the position of Supervisory Prosthetic Representative at Hines VAMC stated that, to qualify for consideration, the applicant must have either one year of specialized work experience at a level of GS-9 or higher, or at least three years of progressively higher graduate education, or a Ph.D. or equivalent doctoral degree. Specialized work experience was defined as "experience that equipped the applicant with the

particular knowledge, skills and abilities to perform successfully the duties of the position, and that is typically in or related to the work of the position to be filled." At the time he applied for the position, Caro had no specialized experience in prosthetics that would qualify him for the position. However, on March 9, 1994, Caro was rated as qualified by VA personnel specialist Clare Hadjuk ("Hadjuk") based on her belief that his foreign medical education could be substituted for specialized experience. Hadjuk later learned that Caro's foreign medical education could not be substituted for specialized work experience until it had been certified as equivalent to medical education provided in the United States. Caro's rating was therefore changed from qualified to unqualified. Caro's medical training was not officially certified as equivalent until November 1994, long after the Supervisory Prosthetic Representative position had been filled. Caro therefore fails to establish that he was qualified for the position at the time it was offered, a necessary element of his *prima facie* case.

Even if Caro could demonstrate that he was qualified for the position, he has not created a genuine issue of material fact as to whether the person selected for the job was less qualified, or that the reasons stated for selecting that person over Caro are unworthy of belief. Wanda Hattaway, the selecting official, chose Kathleen Kirby ("Kirby") for the Supervisory Prosthetic Representative position. At the time she applied for the position, Kirby had over four years of specialized experience, and thirteen years experience

working in the Prosthetic Treatment Center. Caro's subjective belief that he was better qualified for the position is not sufficient to create a genuine issue as to pretext. *See Sanchez v. Henderson*, 189 F.3d 740, 746 (7th Cir. 1999).

### *Program Analyst and Program Specialist*

Caro next applied for a Program Analyst position and was notified that he did not get the promotion by a letter dated December 31, 1998. Caro did not speak with an EEO counselor about this allegedly discriminatory failure to promote until May 14, 1999, well beyond the prescribed 45 day period for contacting an EEO counselor. *See* 29 C.F.R. § 1614.105(a)(1). There does not appear to be any basis for excepting Caro's Program Analyst allegation from this requirement, as the claim does not implicate the same conduct and individuals as the timely filed EEO charge relating to the Computer Program Specialist position. *See Harper*, 45 F.3d at 148. Caro's claim relating to the Program Analyst position is therefore time-barred and may not be pursued in this action.

In March 1999, the VA issued a Promotion Announcement advertising four openings for the position of Computer Program Specialist. Caro applied for the position and was notified subsequently that he had been rated as qualified for the job. Caro did not get the job. Dr. Robert O'Hara ("O'Hara") was the decision maker who selected the four candidates for the Computer Program Specialist positions. At his deposition, O'Hara stated

that, in his opinion, Caro did not have the breadth of experience with the entire computer system at Hines VAMC that he was looking for in a Computer Program Specialist, and that such experience was possessed by the four women eventually picked to fill the positions. For example, unlike Caro, each of the four successful candidates served previously as Automated Data Processing Application Coordinators ("ADPAC"). As evidence of discriminatory animus, Caro points only to the fact that the four women eventually selected to fill the positions had been administratively detailed to perform the duties of a Computer Program Specialist for six months prior to the posting of the announcement for the permanent positions. Rather than discrediting the proffered explanation as a pretext, this fact serves only to strengthen the inference that these candidates were selected over Caro based on their work experience and not some impermissible factor such as race or age. There is simply nothing in the record that could lead a reasonable trier of fact to reject O'Hara's proffered explanation for his action as a lie, a pretext masking an actual discriminatory motivation for the decision. *Cf. Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)(holding that a Title VII plaintiff's evidence of "grooming" for positions amounted to little more than conclusory statements and speculation which do not create a genuine issue for trial).

## CIOFO Administrative Officer

Caro claims that the decision to deny him a promotion to the position of CIOFO Administrative Officer was also motivated by discriminatory animus. There is, however, simply no evidence in the record from which a reasonable trier of fact could draw this inference. Caro does not, as is his burden, provide any evidence that Jean Van Dyke, the woman selected for the position, was less qualified. David Skinner, the decision maker for this position, stated that he was looking for a candidate with resource management and organizational skills. According to Skinner, Van Dyke's work experiences in a variety of positions related to resource management, together with her Masters in Business Administration, made her a better candidate for the job. Skinner stated that he felt Caro's work experience of processing admissions applications did not provide him with the breadth of expertise and knowledge possessed by Van Dyke, and required of a CIOFO Administrative Officer. Moreover, there is no evidence in the record establishing that Skinner possessed any information regarding Caro's age, race or national origin when he made his decision.

Faced with this noninvidious explanation for the decision, Caro suggests that a reasonable trier of fact could infer pretext from the fact that, of the applicants initially rated as qualified, Skinner chose only four candidates for interviews (Caro was not one of the four). VA regulations do state that, if a selecting official interviews any qualified candidate for a position, he or

she is required to interview all qualified candidates. However, a mistake in application of the VA's internal promotion policy does not support a reasonable inference that Skinner lied when he offered Van Dyke's superior qualifications as the rationale for his decision. *See Jordan*, 205 F.3d at 343 (stating that "[e]ven if the reasons for [plaintiff's] non-selection were mistaken, ill-considered or foolish, so long as [the employer] honestly believed those reasons, pretext cannot be shown").

### Emergency Room Administrative Assistant

Promotion to Emergency Room Administrative Assistant is one of several promotions that, according to Caro, he was denied in 2000 due to Soltys' purported campaign to block Caro's career advancement. The VA announced an opening in early 2000 for Administrative Assistant to the Director of the Emergency Room and Caro applied for this position. According to the Secretary, no one was hired for the position; the job was eliminated sometime around April 2000 because there was insufficient funding to continue the position. Caro offers no evidence to the contrary. During this same period when the Emergency Room Administrative Assistant position was cancelled due to budget constraints, the Emergency Room was restructured generally. As a result, several Emergency Room employees were realigned so that they now reported to Caro. Caro believes that he was therefore entitled to a promotion to a higher grade to reflect his new responsibilities. Caro did not receive such a promotion, but Caro points to absolutely no evidence suggesting that this decision was motivated

by race, age, national origin or sex. Moreover, an alteration of job responsibilities is not generally considered a "materially adverse" employment action for purposes of a Title VII or ADEA claim. *Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir. 2000).

### *Administrative Officer in the VISN Imaging Line*

In this same period, Caro was denied a promotion to the position of Administrative Officer in the VISN Imaging Line. The deciding official, Toby Lane ("Lane"), interviewed all the applicants for the position. Lane asked every applicant the same pre-designed questions that were devised to allow the applicant to explain how their experiences in prior positions demonstrated their ability to serve as an Administrative Officer in the VISN Imaging Line. Lane ranked the applicants' responses on a scale of one to five, with five showing a clear indication of relevant skills and experience. The applicants also received scores for education and work experience on the same one to five scale that were then averaged together with the interview score to arrive at a combined score for each applicant. The applicants' scores were then charted on a grid and compared. Caro's combined score was a 3.21, placing him seventh among fourteen applicants. The candidate with the highest scores were then called back for a second round of interviews. Based on his relatively low combined score, Caro was not part of this group. The candidate eventually selected for the position had a combined score of 4.79. Faced with this objective, nondiscriminatory basis for his employer's decision, Caro is mute; he offers no argument of pretext and points to absolutely no

evidence in the record suggesting that any impermissible factor played a role in the decision to choose another applicant over Caro.

### *Medical Records Administrative Specialist*

Caro was also passed over for promotion to the position of Medical Records Administrative Specialist. Unlike most of the other adverse decisions suffered by Caro, this decision was in fact made by Caro's perceived nemesis Soltys. In explaining this decision, Soltys stated that he believed some of the subordinate record coders that would report to the new Medical Records Administrative Specialist were difficult to supervise. Accordingly, Soltys felt it would be helpful for the candidate chosen for the position to have had prior experience coding medical records, and Soltys used this criteria as a substantial factor in making his decision. Although Caro had worked generally with medical records as a medical student, he lacked experience coding medical records at the VA, an experience possessed by the candidate eventually selected by Soltys. There is nothing in the record creating a genuine issue as to whether this nondiscriminatory explanation is a lie, unworthy of belief. *See Hartley v. Wisc. Bell, Inc.,* 124 F.3d 887, 890 (7th Cir. 1997)(holding that an employer prevails if it "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial").

### *Education Coordinator*

Caro was turned down for a promotion yet again in 2000, when Soltys selected Linda Koselke ("Koselke") over Caro for the

position of Education Coordinator. Education Coordinator was a GS-9 position and, as a result, if either Caro or Koselke transferred into the Education Coordinator position, the VA would consider this a lateral move rather than a promotion and would not require the position to be advertised before it was filled. According to Soltys, Koselke expressed an interest in the position and he felt that her experience conducting educational training sessions made her the best candidate for the job. There is nothing in the record suggesting that this articulated, nondiscriminatory basis for the decision is unworthy of belief.

As evidence of pretext, Caro merely points to the fact that the position was filled without being posted for competitive selection. There is absolutely no evidence before the Court suggesting that Soltys' decision to fill the position through an unannounced lateral transfer was contrary to VA policies. Even if Caro could show that Soltys deviated from VA policy in this instance, that fact, standing alone, is insufficient to demonstrate pretext. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 895 (7th Cir. 2001)(Easterbrook, J., dissenting)(stating that "an error won't do; a truthful, nondiscriminatory explanation, right or wrong, ends the case").

### Medical Records Administrator

Finally, Caro complains that he was passed over for a promotion to the position of Medical Records Administrator (GS-13). At the time Caro applied for the position, he was working in a GS-9 position. In order to qualify for the Medical Records

Administrator position, Caro was required to have at least one year of experience as a GS-12; a requirement clearly not satisfied by Caro's GS-9 work experience. Because he cannot establish that he met the objective criteria for the position, Caro fails to establish a *prima facie* case on this claim.

### Retaliatory Failure to Promote

Retaliation for participation in proceedings under Title VII or the ADEA, or for opposition to practices made unlawful by those acts, is explicitly prohibited by each statute. 42 U.S.C. § 2000e-3(a)(Title VII); 29 U.S.C. § 623(d)(ADEA). The plaintiff in a retaliation case may avoid summary judgment in one of two ways. The first is to "present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complains." *Stone*, 271 F.3d at 644. The second route to escaping summary judgment "requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action." *Id.* If, however, the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, the defendant is entitled to summary judgment. *Id.*

Because Caro put in for so many promotions over the years, the interplay between EEO activity and subsequent promotion denials is a bit convoluted. The following chronology is intended to clarify

the temporal relationships between Caro's EEO activity and subsequent adverse employment actions:

- Caro contacted an EEO counselor and filed a complaint of discrimination on the basis of race, sex, and handicap on May 12, 1999 following his non-selection for the Supervisory Prosthetic Representative position in April 1994.

- Caro did not put in for another promotion until he applied for the Program Analyst position in 1998. Caro was notified on December 31, 1998 that he was not selected for this position, but failed to make timely contact with an EEO counselor.

- Caro was notified that he had not been selected for the position of Program Specialist on May 17, 1999.

- Caro contacted an EEO counselor and filed a charge of retaliation and discrimination on the basis of race, national origin, sex, and age on June 21, 1999.

- On November 4, 1999 the VA announced an opening for a CIOFO Administrative Officer. Caro applied for the position and was notified on March 20, 2000 that he had not been selected for the position. He contacted an EEO counselor and filed a complaint alleging retaliation and discrimination on the basis of race, national origin, sex, and age on May 1, 2000.

- Caro put in for a promotion to ER Administrative Assistant sometime in early 2000 and was notified in April 2000 that the position had been eliminated due to budget cut backs.

- In May 2000, Caro was passed over for the position of Medical Records Administration Specialist. He was notified in June 2000 that he had not been selected for the position. Caro also applied and was rated not-qualified for the position of Medical Records Administrator in this period.

- Caro filed a new EEO complaint on July 3, 2000, alleging retaliation and discrimination on the basis of national origin, and sex following his non-selection for the positions of Medical Records Administration Specialist and Medical Records Administrator.

- Sometime in February 2000, Caro applied for the position of Administrative Officer in the VISN Imaging Line. Caro was notified on August 16, 2000 that another employee had been selected for the position.

- Sometime in the autumn of 2000, Caro was passed over for the position of Education Coordinator, which was filled without competition.

- In October 2000, Caro amended his previous EEO complaint to add charges relating to the positions for Education Coordinator and Administrative Officer in the VISN Imaging Line.

- At some point in 2000, Caro applied for the position of Financial Analyst. Caro was not selected for the position and filed another EEO complaint on January 30, 2001, again alleging retaliation and discrimination on the basis of race, national origin, and age. The person originally selected for this position eventually elected not to take the job. Caro was then re-interviewed and selected for the Financial Analyst position in March 2001.

Caro does not present direct evidence – evidence that establishes discrimination without resort to inference from circumstantial evidence – of retaliatory failure to promote. Is there any indirect evidence supporting a reasonable inference that the numerous adverse promotion decisions made by the VA were motivated by a retaliatory animus? Most of the adverse promotion decisions came months after Caro had initiated EEO action. While Caro was passed over for several promotions in the months following

his July 3, 2000 EEO complaint, the mere temporal proximity between the filing of his July 2000 EEO complaint and the adverse decisions in September and October 2000 is insufficient, standing alone, to create a genuine issue of material fact requiring trial. *See Stone*, 281 F.3d at 644. Moreover, the Secretary has provided a noninvidious reason for every adverse promotion decision complained of by Caro. To rebut that evidence and survive summary judgment, Caro must point this Court to some evidence in the record establishing that his employer did not honestly believe its proffered explanations. *See Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). Caro's only evidence in this regard is his own subjective belief that participation in the MAO program entitled him to these positions without competition, together with his own personal assessment that he was the most qualified person for each of the approximately forty promotions he has applied for since 1991. It is well-established precedent in the Seventh Circuit that a plaintiff may not defeat a motion for summary judgment with a self-serving affidavit devoid of any factual support in the record. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). Similarly, the Seventh Circuit has held that, in the employment discrimination context, "an employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability." *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992). Caro's claims of retaliation rely exclusively on his own subjective evaluation of his qualifications for these promotions. Based on this record, Caro has not presented evidence sufficient to

- 28 -

rebut the Secretary's proffered, noninvidious reasons for the adverse promotion decisions. The Secretary is therefore entitled to summary judgment on Caro's claims of retaliatory failure to promote. *See Stone*, 281 F.3d at 644.

## CONCLUSION

For the reasons set forth above, Caro's Motion for Summary Judgment as to Counts II and V is DENIED and the Secretary's Motion for Summary Judgment is GRANTED. The case is DISMISSED in its entirety pursuant to Federal Rule of Civil Procedure 56.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: November 21, 2002